ECF
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DAVID SCOTT,                                              :
                                                          :
                                                          :    Docket No.: 06 CV 6029
                          PLAINTIFF,                      :            (DAB)
            -AGAINST-                                     :        Judge Batts
                                                          :
                                                          :
NATIONAL ASSOCIATION FOR STOCK CAR AUTO                   :
RACING, INC., INTERNATIONAL SPEEDWAY                      :
CORPORATION, PENSKE RACING, INC.,DETROIT                  :
DIESEL CORPORATION, CALHOUN ENTERPRISES,                  :
MIKE HELTON, individually and in his capacity as          :
President of NATIONAL ASSOCIATION FOR STOCK               :
CAR AUTO RACING, INC., WILLIAM C. FRANCE,                 :
individually and in his capacity as Chairman of           :
INTERNATIONAL SPEEDWAY CORPORATION and                    :
Chief Executive Officer of NATIONAL ASSOCIATION           :
FOR STOCK CAR AUTO RACING, INC.,  BRIAN                   :
FRANCE, individually and in his capacity as a Board       :
Member of INTERNATIONAL SPEEDWAY                          :
CORPORATION, ROGER PENSKE, individually and in            :
his capacity as a President and Owner of PENSKE           :
RACING, LLC., President and Owner of DETROIT              :
DIESEL CORPORATION, and as Vice-Chairman of the           :
Board of Directors of INTERNATIONAL SPEEDWAY              :
CORPORATION, GEORGE PYNE, individually and in his:
capacity as the former Vice President of Marketing        :
Licensing and  former Director of Operations and as a     :
Board Member of NATIONAL ASSOCIATION FOR                  :
STOCK CAR AUTO RACING, INC., CALVIN C.                    :
SHARP, individually and in his capacity as Senior Vice    :
President of DETROIT DIESEL CORPORATION, and              :
GREG CALHOUN, individually and in his capacity as         :
President of CALHOUN ENTERPRISES and as a                 :
Minority Diversity Consultant NATIONAL                    :
ASSOCIATION FOR STOCK CAR AUTO RACING,                    :
INC.,                                                     :
                                                          :
                          DEFENDANTS.                     :
------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CALHOUN ENTERPRISES AND GREG CALHOUN'S MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER VENUE

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ----------------------------------------------------------------  ii

PRELIMINARY STATEMENT ---------------------------------------------------------  1

STATEMENT OF FACTS ---------------------------------------------------------------  1

ARGUMENT ----------------------------------------------------------------------------------  2

POINT I      PLAINTIFF'S CLAIMS AGAINST CALHOUN ENTERPRISES
                AND CALHOUN SHOULD NOT BE DISMISSED BECAUSE
                THE COURT LACKS PERSONAL JURISDICTION OVER THEM    2

POINT II     DEFENDANTS ARE PROPER PARTIES TO THIS ACTION -----  3

POINT III    PLAINTIFF'S §1981 CLAIM SHOULD NOT BE DISMISSED AS A
                MATTER OF LAW -------------------------------------------------------  3

POINT IV    PLAINTIFF'S §1985(3) CONSPIRACY CLAIM SHOULD NOT BE
                DISMISSED AS A MATTER OF LAW --------------------------------  3

POINT V     PLAINTIFF'S BREACH OF CONTRACT CLAIM
                SHOULD NOT BE DISMISSED AS A MATTER OF LAW -----------  8

POINT VI    THIS ACTION SHOULD NOT BE TRANSFERRED ------------------  9

CONCLUSION -------------------------------------------------------------------------------  9, 10

# TABLE OF AUTHORITIES

|  | Page |
|---|---|
| **Federal Cases** | |
| Cleft of the Rock Foundation v Wilson | |
| *992 F. Supp 574 (EDNY 1998)* | 4 |
| DiStefano v Carozzi North America Inc. | |
| *286 F. 3d. 81, 84-85 (2d Cir 2001)* | 3 |
| Dixon v Mack | |
| *507 F. Supp 345, 352 (SDNY 1980)* | 4, 5 |
| Ghazoul v. International Management Services Inc. | |
| *398 F. Supp. 307 (SDNY 1975)* | 4 |
| Lehigh Valley Industries Inc. v Birenbaum | |
| *389 F. Supp 798 (SDNY 1975) affd 527 F. 2d. 87 (2d Cir 1975)* | 4 |
| Louis Marx & Co., Inc. v Fuji Seiko Co Ltd | |
| *453 F. Supp. 385 (SDNY 1978)* | 4 |
| In re Med-Atlantic Petroleum Corp | |
| *233 B.R. 644 (Bktcy SDNY 1999)* | 4 |
| Socialist Workers Party v Attorney General of US | |
| *375 F. Supp 318 (SDNY 1974)* | 4 |
| | |
| **Federal Statutes** | |
| 28 USC §1404(a) | 1 |
| 42 USC §1981 | 6, 10 |
| 42 USC §1985(3) | 6, 10 |
| FRCP 12(b)(2) | 1 |
| FRCP 12(b)(6) | 1, 9 |
| **State Statutes** | |
| CPLR §302(a) | 2 |
| CPLR §302(a)(3) | 2 |

**PRELIMINARY STATEMENT**

Plaintiff submits this Memorandum of Law in Opposition to Calhoun Defendants' Motion to Dismiss pursuant to FRCP 12(b)(2) and 12(b)(6)or, in the alternative, to transfer venue from this Court to the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. §1404(a). For the reasons set forth herein, Plaintiff's Amended Complaint should not be dismissed against Defendants. First, Plaintiff demonstrates that the Court has personal jurisdiction over Calhoun Enterprises and Greg Calhoun. Second, Plaintiff's Amended Complaint contains specific allegations against Calhoun Enterprises or Calhoun and properly names them as parties in this action. Third, Plaintiff §1981, §1985 and breach of contract claims all state a cause of action upon which relief can be granted. Lastly, none of the Plaintiff's claims are time barred. Accordingly, Plaintiff's Amended Complaint against Defendants Calhoun Enterprises and Calhoun should not be dismissed..

**STATEMENT OF FACTS**[1]

For a recitation of the allegations set forth in Plaintiff's Amended Complaint (hereinafter Am Comp), Plaintiff respectfully refers the Court to the Statement of Facts contained in Plaintiff's Memorandum of Law submitted in Opposition to the NASCAR defendants, DDC/PR Penske, and Sharp Motions to Dismiss or, in the alternative, to transfer venue. (See NASCAR Defs. Mem. At 1-3).[2] ¶72 in the Am Comp references the Calhoun Defendants and includes that Defendant Calhoun

---

[1] Defendants admit the truth of each of the factual allegations set forth in the Amended Complaint at this time. Calhoun Defendants Memorandum of Law, Footnote 1.

[2] Notably, Counsel for Defendants Calhoun Enterprises and Calhoun also represent Defendants NASCAR, Mike Helton, William C. France, Brian France, George Pyne and International Speedway Corporation.

sent Plaintiff a letter in or about September 2000 recommending possible work opportunities; and also alleging that Defendant Calhoun attended a meeting where he purportedly acknowledged that Plaintiff received severance from Penske-Kranefuss Racing Inc. (Am. Com. ¶66-67, 72).

## ARGUMENT

**POINT I    PLAINTIFF'S CLAIMS AGAINST CALHOUN ENTERPRISES AND CALHOUN SHOULD NOT BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION**

Plaintiff's claims against Calhoun Enterprises and Calhoun should not be dismissed on the purported grounds that the court lacks personal jurisdiction over them. The Calhoun defendants' Motion to Dismiss for purported absence of personal jurisdiction should be rejected as meritless. New York's long arm personal jurisdiction case precedent permits the exercise by a New York based Federal Court over a non-domiciliary, inter alia, on the following grounds:

> "§302(a) **Acts which are the basis of jurisdiction**. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. Commits a tortious act within the state; or
> 3. Commits a tortious act without the state causing injury to person or property within the state, if he
>    [i]   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>    [ii]  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . ."

The predominant test used by the lower state courts to ascertain the situs of Plaintiff's injury under CPLR §302(a)(3) is whether New York was the "the location of the original event which caused the injury." The Second Circuit Court of Appeals has restated the rule as a requirement that the "first

effect" of the tortious act be experienced by the Plaintiff in New York. DiStefano v Carozzi North America, Inc., 286 F.3d. 81, 84-85 (2d Cir 2001). It is submitted that the federal court's reformulation is preferable to the phraseology currently used by the state courts because it helps avoid applications of the statute that conflate the tortious act with its consequences.

Such blending of the injury with the precipitating tortious act led to an erroneous decision by the trial court in the DiStefano case. There, the Plaintiff was a New York resident who undertook the performance of marketing and sales services in New York on behalf of an out-of-state employer. A few months after his employment began, Plaintiff was terminated, prompting his commencement of a federal diversity action in New York alleging violations of anti-discrimination laws. The employer's termination decision, which the district judge characterized as the "original event that caused Plaintiff's injury," occurred in New Jersey, thus depriving the court of jurisdiction.

The Second Circuit reversed, holding that the decision to discharge the employee on improper grounds, which occurred in New Jersey, was the relevant "tortious act without the state." As to the Plaintiff's injury, the "original event" was his "experience of being removed from his job." Using its own articulation of the situs-of-injury test, the court said that the Plaintiff experienced the 'first effect' of losing his job in New York, even though he was fired in New Jersey. 286 F.3d 85. Assuming arguendo (i.e. giving the benefit of the doubt to movants for the purpose of this branch of the motion) that the decision to sever Plaintiff was made either by PR or DDC in Michigan, or by NASCAR in North Carolina, or its actual headquarters in Florida[3], the DiStefano Second Circuit

---

[3] As a matter of logic and circumstantial evidence, it is much more reasonable, probable and likely that discovery will disclose that the decision on severance was made, inter alia, by PR/DDC and NASCAR, while their officers, employees and other agents were in Watkins Glen, New York.

3

ruled that the severance of employment decision being out of state did not deprive the New York Federal Court of personal jurisdiction, since the first impact of the decision to get rid of African-American Plaintiff manifested itself to Plaintiff in New York (i.e., physical removal of Plaintiff from his job at Watkins Glen, New York) Am. Com. ¶38 and 40.

Cleft of the Rock Foundation v Wilson, 992 F. Supp. 574 (EDNY 1998) pushed the frontiers of personal jurisdiction over non-domiciliaries even further.  It held the exercise of personal jurisdiction over a non-resident attorney in an investors' action for damages sustained through fraudulent schemes based upon tortious acts committed in New York by co-conspirators would not violate due process by joining a conspiracy with knowledge that overt acts had taken place in New York, and the attorney defendant purposefully availed himself of the privilege of conducting activities within this state.

In an appropriate case the acts of the co-conspirator may be attributed to a defendant for purpose of obtaining personal jurisdiction over defendant.  Louis Marx & Co., Inc. v Fuji Seiko Co. Ltd, 453 F. Supp. 385 (SDNY 1978).  See also, Ghazoul v. International Management Services Inc.,, 398 F. Supp. 307 (SDNY 1975); Lehigh Valley Industries Inc. v Birenbaum, 389 F. Supp 798 (SDNY 1975), affirmed 527 F. 2d. 87 (2d Cir 1975); Socialist Workers Party v Attorney General of US, 375 F. Supp 318 (SDNY 1974).  An out of state defendant may be held responsible, for jurisdictional purposes under the New York long-arm statute, for acts of co-conspirator in carrying out activities in New York in accordance with conspiracy.  In re Med-Atlantic Petroleum Corp., 1999, 233 B.R.. 644 (Bktcy SDNY 1999)

In Dixon v Mack, 507 F. Supp. 345, 352 (SDNY 1980), closely analogous in many respects to the case at bar, Mitchell Dixon, an adherent of the Unification Church, brought an action in the

4

Southern District of New York, alleging that a conspiracy had deprived him of his civil rights by forcibly abducting him from New York City and driving him to out-of-state locations, first in New Jersey, then in Pennsylvania, where certain of the defendants attempted to "deprogram" him. Defendant William Rick was a Pennsylvania psychiatrist hired by one of the other defendants, after the abduction, to examine Dixon, following which Rick wrote a report asserting that in his professional opinion, Dixon was "unbalanced" (*id.* at 347). Rick, in moving to dismiss the complaint against him for lack of personal jurisdiction, asserted that his practice was in Pennsylvania and he had no connection to New York, and indeed, that his only act was to examine Dixon, in Pennsylvania, after Dixon's abduction (*id.*). However, the court noted that the allegations of the complaint and other materials gave rise to reasonable inferences not only that Rick knew he was participating in an effort to "deprogram" Dixon, but that in the process of joining the conspiracy he subsequently ratified Dixon's abduction (*id.* at 348-349). Consequently, his alleged participation in the conspiracy, including his ratification of an act that took place in New York, was sufficient for a prima facie showing that New York could properly exercise jurisdiction over Rick, i.e., a "sufficient start" to permit the case to proceed.

At bar, clearly, although the Calhoun defendants may have joined the conspiracy after the plaintiff was physically removed from Watkins Glen, New York, they are alleged to have done so with knowledge of the conspiracy. Under the Dixon v Mack authority, the Calhoun defendants ratified or adopted the prior wrongful overt acts of the remaining defendants including their physical removing of plaintiff from the New York racetrack. Clearly, then they are subject to this Court's personal jurisdiction.

## POINTS II, III and IV
## CALHOUN DEFENDANTS ARE PROPER PARTIES AND THE AMENDED COMPLAINT STATES CLAIMS AGAINST THEM UNDER §§1981, 1985(3); NOR ARE THEY TIME-BARRED

Calhoun Defendants are proper parties and the Amended Complaint states a claim against them under §§1981, 1985(3); nor are they time-barred. Plaintiff has alleged the following acts by Defendants Calhoun and Calhoun Enterprises.

The Introductory Paragraph alleges that they conspired on various occasions to prevent Plaintiff from continuing his employment, and enforcing a contract with NASCAR, to prevent Plaintiff from enjoying all the benefits, privileges, terms and conditions of (employment) contractual relationship and intentionally discriminating against Plaintiff in his continuing employment with Penske Racing and in denying him later employment with NASCAR, and in denying Plaintiff access to NASCAR sanctioned racetracks on the basis of his race and his civil rights and in breach of contract.

¶12 alleges Calhoun Enterprises is an Alabama corporation. ¶66 alleges that Defendant Calhoun owned Defendant Calhoun Enterprises. It also alleges he serves as a NASCAR agent for minority/diversity matters. It also alleges he was hired as such after the ESPN broadcast publicizing (KKK type) activities at NASCAR, or NASCAR sanctioned tracks. ¶67 alleges Calhoun discovered circumstances involving Plaintiff's severance from his racetrack employment; they further provide reasonable basis from which the fair inferences can be drawn that Calhoun attempted to dissuade Plaintiff from pursuing his dream and right to NASCAR related re-employment. ¶68 alleges Calhoun and by inference and/or respondeat superior Defendant Calhoun Enterprises Inc. conspired with named others regarding the "severance" package, (Plaintiff's "severance" included promises of

6

contract of re-employment). ¶69 alleges Calhoun and Calhoun Enterprises relied on the severance package to relieve or shield them and their principals of their liability to perform the promise of re-employment made by NASCAR et al. ¶70 alleges Calhoun and Calhoun Enterprises engaged in acts to convince Plaintiff that they and their principal NASCAR/PR were actively seeking to locate a re-employment position for Plaintiff. ¶72 alleges Calhoun and Calhoun Enterprises acted as noted above (to attempt to induce Plaintiff to accept non NASCAR employment in September 2000), all in furtherance of the conspiracy to deny Plaintiff access to NASCAR related racing tracks on the basis of his race. ¶73 alleges, inter alia, that Calhoun and Calhoun Enterprises telephoned Plaintiff about employment (with an inference it was for purpose of delaying any employment by NASCAR at NASCAR related tracks).¶74 alleges that inter alia, Calhoun and Calhoun Enterprises spoke to Plaintiff regarding him possibly becoming a racing official, but that Calhoun and Calhoun Enterprises actively dissuaded Plaintiffs with arguments that NASCAR would not pay him much. ¶75 alleges Calhoun and Calhoun Enterprises failed to hire Plaintiff, or obtain their agent's (NASCAR), approval of such a fulfillment of the contractual promises made to Plaintiff. ¶77 alleges Defendant Calhoun and Calhoun Enterprises continued to discuss with Plaintiff for five or more years the possibility of employment by NASCAR. ¶84 alleges that inter alia Calhoun and Calhoun Enterprises had discriminated against him on basis of African-American ancestry regarding employment. ¶86 alleges inter alia that Calhoun and Calhoun Enterprises caused irreparable harm to Plaintiff. ¶87 alleges Calhoun and Calhoun Enterprises caused Plaintiff compensatory damages. ¶91 alleges that Calhoun and Calhoun Enterprises (inferentially as agent of NASCAR). Refused to continue employing and failed to hire Plaintiff subsequent to original severance package due to Plaintiff's ancestry and ethnicity and denied to Plaintiff the right to make and enforce contracts as

is enjoyed by white citizens. ¶92 alleges that the actions of Calhoun and Calhoun Enterprises to deny Plaintiff rights to make and enforce a contract were malicious. ¶93 alleges the unlawful conduct of inter alia that Calhoun and Calhoun Enterprises caused Plaintiff various consequential damages. ¶95 and 96 allege that inter alia Calhoun and Calhoun Enterprises entered into a civil conspiracy for the purpose of depriving Plaintiff of the equal protection of the laws. ¶100 alleges that Calhoun and Calhoun Enterprises violated their agreement to obtain (NASCAR) employment for Plaintiff. ¶101 alleges that inter alia Calhoun and Calhoun Enterprises breached their agreement to obtain (NASCAR) employment for Plaintiff. ¶103 alleges that inter alia Calhoun and Calhoun Enterprises animus in said acts was racially motivated.

Plaintiff will not burden this busy Court with a repetition of the arguments raised by Plaintiff in Opposition to the NASCAR, DDC, PR and ISC Defendants, raising virtually identical arguments against the Amended Complaint. Rather, Plaintiff respectfully refers the Court to those arguments found at Plaintiff's Memorandum of Law in Opposition to NASCAR defendant motions (pages 3-20 of opposition to NASCAR defendants' motion).

**POINT V   THE BREACH OF CONTRACT CLAIMS SHOULD NOT BE DISMISSED BASED ON STATUTE OF FRAUDS, VAGUENESS OR STATUTE OF LIMITATIONS**

The breach of contract claims should not be dismissed based on statute of frauds, vagueness or statute of limitations. Plaintiff will not burden this busy Court with a repetition of the arguments raised by Plaintiff in Opposition to the NASCAR, DDC, PR and ISC Defendants, raising virtually identical arguments against the Amended Complaint. Rather, Plaintiff respectfully refers the Court to those arguments found at Plaintiff's Memorandum of Law in Opposition to NASCAR's motions (located at pages 22-25).

In regards to the Calhoun defendants' contentions that Count III does not allege breach of promise by them made to Plaintiff, it is axiomatic that a 12(b)(6) motion may not be granted if, under the facts as alleged, Plaintiff could possibly prevail at trial upon an <u>unpleaded</u> claim. Quite arguably, Count III may be construed as or raises inferentially an intentional interference with contract or prospective pecuniary advantage claim against the Calhoun Defendants. This constitutes an additional reason why the Count III may not be dismissed at such an early stage of this action and Plaintiff respectfully requests leave to serve a further Amended Complaint to add such claim should the Court find a §12(b)(6) infirmity as advanced by Calhoun.

## POINT VI
## THE ACTION SHOULD NOT BE TRANSFERRED

The action should not be transferred. Plaintiff will not burden this busy Court with a repetition of the arguments raised by Plaintiff in Opposition to the NASCAR, DDC, PR and ISC Defendants, raising virtually identical arguments against the Amended Complain. Rather, Plaintiff respectfully refers the Court to those arguments found at Plaintiff's Memorandum of Law in Opposition to the Penske Racing LLC motion (located at pages 11-19 of opposition to NASCAR defendants' motion).

## CONCLUSIONS

POINT I                PLAINTIFF'S CLAIMS AGAINST CALHOUN ENTERPRISES AND CALHOUN SHOULD NOT BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION

POINTS II, III and IV:   CALHOUN DEFENDANTS ARE PROPER PARTIES AND THE AMENDED COMPLAINT STATES A CLAIM AGAINST THEM UNDER §§1981, 1985(3); NOR ARE THEY TIME-BARRED

| | |
|---|---|
| POINT V | THE BREACH OF CONTRACT CLAIMS SHOULD NOT BE DISMISSED BASED ON STATUTE OF FRAUDS, VAGUENESS OR STATUTE OF LIMITATIONS |
| POINT VI | THE ACTION SHOULD NOT BE TRANSFERRED |

Dated: Bronx, New York
      March 23, 2007

Respectfully submitted,

/s/ Peter R. Shipman
PETER R. SHIPMAN, ESQ.
CODELIA & SOCORRO, P.C.
    (Successor firm to Codelia, Aguirre
    & Socorro, P.C.
Attorneys for Plaintiff
1967 Turnbull Avenue, Suite 6
Bronx, New York 10473
(718) 931-2575